UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE FALCO,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>Defendant. | Civil Action No. 18-2766 (JEB) |

# MEMORANDUM OPINION

Commuting from work, Plaintiff Diane Falco slipped and fell in the Pentagon City Metro station. She has sued the Washington Metropolitan Area Transit Authority for negligently failing to clean up water on the station platform. Defendant now moves for summary judgment, arguing both that it is entitled to discretionary immunity and that it lacked actual or constructive notice of the wet conditions at the station. Disagreeing as to both contentions, the Court will deny the Motion.

## I. Background

Looking at the facts in the light most favorable to Falco, on January 12, 2018, she was traveling home via the Pentagon City Metro station in Virginia. See Compl., ¶ 5. While exiting the train at the station, she noticed that the platform tiling was "very slippery." ECF No. 14-1 (Exhibits to Pl. Opp. to MSJ), Exh. 1 (Deposition of Diane Falco) at 33. She started to make her way across the platform toward the escalator. Id. After walking two train-car lengths down the platform, she slipped, lost her balance, and fell to the ground. Id. at 33–34. She saw no wet-floor signs or cones warning of the slippery condition. Id. at 30.

1

Six months before her fall, Falco had had a partial right-knee replacement. Id. at 12; see ECF No. 7-2 (Dr. Thomas Fleeter Letter) at 1–2. When she fell, she "hit hard on [her] right side" and "rolled towards the left." Falco Depo. at 35. As a result, she suffered a fracture of her right knee. Id. She could not put any weight or pressure on her leg and could not return to work for four weeks. Id. Since the fall, Falco limps and "fatigues easily," as her right leg remains weaker. See Fleeter Letter at 1.

On the same day of the incident, coincidentally, WMATA was conducting a routine inspection of the station. See Pl. Opp., Exh. 2 (WMATA Inspection Report) at 3. The inspector examined the station for structural issues, including the joints, walls, and drainage. Id. at 3–5. That morning, he observed that the floor and walls of the station's passageway — the area outside of the fare gates and above the platform — were wet. Id. at 3. He also noticed that the ceiling "had moisture throughout." Id. According to the report, the station manager claimed that the condition "happen[ed] a few times a year when there [was] high humidity." Id. While Defendant does not deny that the passageway was wet, it disputes whether the station platform, where Plaintiff claims she slipped, was. See ECF No. 14-2 (Pl. Statement of Material Facts) at 2. The Court, however, must at this stage credit Falco's testimony and conclude that there was water on the platform.

Plaintiff initially brought a negligence claim against WMATA in the Superior Court of the District of Columbia. See ECF No. 1 (Notice of Removal). Defendant then removed the case here under D.C. law, which permits actions brought against the Authority to be removed to federal court. See Notice of Removal at 2 (citing D.C. Code § 9-1107.01(81)). Defendant now seeks summary judgment, claiming its failure to clean up the water should be afforded discretionary immunity from liability. See ECF No. 13 (Def. MSJ). In replying to Plaintiff's

Opposition to the Motion, Defendant also argued that it was not liable for Falco's injuries because it lacked actual or constructive notice of the wet conditions at the station. See ECF No. 15 (Def. Reply) at 3–4. The Court then permitted Plaintiff to then file a Surreply on the notice issue. See ECF No. 17 (Pl. Surreply). As all issues are now briefed, the Motion is ripe for resolution.

## II. Legal Standard

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant,

in other words, is required to provide evidence that would permit a reasonable jury to find in her favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1241–42 (D.C. Cir. 1987).

## III. Analysis

WMATA stakes out two positions in its Motion. First, it contends that it is entitled to discretionary immunity for its decision to let water evaporate, rather than to clean it up. Second, it asserts that it had no actual or constructive notice of the wet conditions on the platform and is therefore not liable under a theory of negligence. Discretionary immunity is jurisdictional; "unless WMATA's sovereign immunity has been waived," courts "lack[] jurisdiction to enter a judgment against [it]." Watters v. WMATA, 295 F.3d 36, 40–41 (D.C. Cir. 2002). As a result, the Court will consider this question first and then examine whether Defendant had actual or constructive notice of the wet conditions.

### A. Discretionary Immunity

WMATA was created through congressional approval of the Washington Metropolitan Area Transit Authority Compact. See Pub. L. No. 89-774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9-1107.01 et seq.). The compact's signatories — Maryland, Virginia, and the District of Columbia — have conferred limited sovereign immunity on WMATA. See Beebe v. WMATA, 129 F.3d 1283, 1286–87 (D.C. Cir 1997). Specifically, the Authority has waived sovereign immunity for "its torts . . . committed in the conduct of any proprietary function," but not "for any torts occurring in the performance of a governmental function." D.C. Code § 9-1107.01(80). Where the activity is not a quintessential governmental function, as WMATA concedes here, "immunity will depend on whether the activity is 'discretionary' or 'ministerial.'" Hopps v. WMATA, 480 F. Supp. 2d 243, 245 (D.D.C. 2007). Only activities that are "discretionary" are granted immunity. Id.

4

A discretionary activity "is one that involves choice or judgment" and is exercised based on considerations of public policy. United States v. Gaubert, 499 U.S. 315, 325 (1991). It can include "day-to-day management" and is "not confined to the policy or planning level." Id. When determining whether an activity is a discretionary one, a court must first determine whether "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" Burkhart, 112 F.3d at 1217 (quoting Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995)). If a specific course is mandated, sovereign immunity does not prevent suits based on a failure to follow that course. Id. On the other hand, where the statute, regulation, or policy leaves the government room for choice, "an exercise of such choice is exempt from suit." Id.

WMATA contends here that it chose not to mop up the water, thus entitling it to discretionary immunity. It cites WMATA v. Barksdale-Showell, 965 A.2d 16 (D.C. 2009), in asserting that "WMATA's policy of allowing wet surfaces to dry by evaporation . . . [is] precisely the type of social, economic and policy based judgment[] that ha[s] been held to be immunized from liability." Def. MSJ at 9. Yet in Barksdale-Showell, WMATA identified a specific policy governing evaporation, and the case concerned a specific instance where the Authority had to decide between attempting to dry the inside of the station and its escalators, or clearing the snow and ice from the outside of the station. See 965 A.2d at 23. As WMATA has identified no such competing interest here nor cited any policy regarding evaporation (or anything else), it is not entitled to discretionary immunity. Id. (granting WMATA discretionary immunity for "commit[ting] to clearing or treating snow and ice from exterior sidewalks and parking lots . . . rather than to the hopeless tasks of drying floors, platforms, and escalators which are continuously in use and operation"); see also Smith v. WMATA, 290 F.3d 201, 208–09 (4th

5

Cir. 2002) (WMATA entitled to discretionary immunity for choosing to turn off the one functioning escalator, converting it to stairs temporarily, rather than forcing all exiting patrons to use elevator while repairing escalator).

WMATA rejoins that it did make a choice in deciding not to mop up the water; more specifically, it chose not to spend the money to dry the platform. See Def. MSJ at 9 (stating that "attempting to remove moisture" would be "costly and ineffective"). But Defendant has offered no evidence of what it would cost to clean up the station or whether any actual decision on this front occurred. And "[t]he mere presence of choice — even if that choice involves whether money should be spent — does not trigger" discretionary immunity. Cope, 45 F.3d at 450; see also KiSKA Constr. Corp., U.S.A. v. WMATA, 321 F.3d 1151, 1161 (D.C. Cir. 2003). Virtually all government actions involve some economic calculus. See Cope, 45 F.3d at 499 (explaining that budgetary constraints underlie almost all government activity). Letting WMATA off simply because any action involves choice and money would negate the waiver of immunity in the Compact. Id. at 449. While day-to-day decisions may qualify for the purposes of discretionary immunity, Gaubert, 499 U.S. at 325, "exempt decisions" must be those "'fraught with . . . public policy considerations,'" not just those that involve money and choice. KiSKA, 321 F.3d at 1161 (quoting Cope, 45 F.3d at 449); Cope, 45 F.3d at 448, 451 (discretionary function not appropriate for "garden variety choices" and "routine questions of maintenance"). WMATA is therefore not entitled to discretionary immunity.

B. Negligence

Defendant alternatively posits that it is entitled to summary judgment on the question of notice. Under District of Columbia law, plaintiffs bringing negligence claims must show that: "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and

6

(3) the breach of duty proximately caused damage to the plaintiff." Bradley v. NCAA, 249 F. Supp. 3d 149, 167 (D.D.C. 2017) (quoting Haynesworth v. D.H. Stevens Co., 645 A.2d 1095, 1098 (D.C. 1994)). "To avoid summary judgment, [a plaintiff] 'must produce evidence from which a reasonable juror may conclude that a certain hazard caused the injury and that the defendant had actual or constructive notice of that hazard.'" Mixon v. WMATA, 959 A.2d 55, 58 (D.C. 2008) (quoting Marinopolski v. Irish, 445 A.2d 339, 340 (D.C. 1982)). Constructive notice exists when the dangerous condition has "existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected." Sullivan v. AboveNet Commc'ns, Inc., 112 A.3d 347, 356 (D.C. 2015) (quoting Anderson v. Woodward & Lothrop, 244 A.2d 918, 918–19 (D.C. 1968)).

WMATA here contends that it lacked both actual and constructive notice of the slippery condition that Plaintiff alleged caused her injury. See Def. Reply at 4. Falco attacks this on both fronts, claiming that Defendant had actual and constructive notice of the conditions. See Pl. Surreply at 2, 4. The Court looks at each separately.

1. *Actual Notice*

There is no doubt that WMATA was aware that the floor of the passageway was wet; indeed, it set up wet-floor signs. See ECF No. 17-1 (Exhibits to Pl. Surreply), Exh. 3 (Deposition of Brian Miller) at 20–21. The station manager agreed that, when he opened the station in the morning, the water was "edge to edge." Id., Exh. 1 (Deposition of Station Manager Johnson) at 14–15. In fact, WMATA's inspector asked the managers about the water while conducting his routine inspection, and one station manager acknowledged it and responded that the water accumulates "a few times a year when there is high humidity." WMATA Report at 6. As to the platform itself, after Plaintiff fell, she spoke with a station manager, who said that

7

"people have been complaining all day." Falco Depo. at 37. Construing these facts in favor of Plaintiff, a reasonable jury could find that Defendant had actual notice of the slippery conditions on the platform.

2. *Constructive Notice*

Even assuming that Defendant did not have actual notice, it had constructive notice. "[D]uration of the alleged hazard is important in establishing constructive notice." Wilson v. WMATA, 912 A.2d 1186, 1190 (D.C. 2006) (citing Hines v. Safeway Stores, Inc., 379 A.2d 1174, 1175 (D.C. 1978)). Here, Plaintiff testified that she saw the wet conditions when she was in the station in the morning. See Falco Depo. at 35–36. As mentioned, station staff also testified about seeing water in the passageway in the morning. See Johnson Depo. at 14–15. The station's inspector reported observing the water and discussing it with the station manager. See WMATA Report at 4. Plaintiff testified that when she told the station manager about her injury, she was informed that "people ha[d] been complaining all day." Falco Depo. at 33 (emphasis added). All this points to the conclusion that water existed from the beginning of the day until around 4 p.m., when Plaintiff sustained her injury. "[I]n the exercise of reasonable care, [dangerous condition's] existence should have become known and corrected." Sullivan, 112 A.3d at 356.

Defendant responds that, despite the testimony that the wet conditions in the station persisted throughout the day, there was nothing that a jury could use to draw an inference that WMATA should have known that there was condensation on the platform. See Def. Reply at 5–6. WMATA cites testimony from its staff that there would not be water on the platform itself. Id. at 5. But, as Plaintiff points out, only one of the three staff members testified that they actually went down to the platform that day. See Pl. Surreply at 7–8. That staff member,

8

moreover, testified that his latest visit to the platform was at 12:30 p.m., more than three full hours before the incident. See Johnson Depo. at 10–12. A jury could thus find that WMATA had constructive notice of water on the platform.

## IV. Conclusion

For these reasons, the Court will deny Defendant's Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 29, 2020